and I'm Ray Halperin making an appearance on behalf of the petitioner. Welcome to the Ninth Circuit. Thank you, Your Honors. Basically, in this case, we have the main issue is firm resettlement. The controlling case law in the Ninth Circuit, CHIO v. INS and Andresian v. INS, have held that there is a rebuttable presumption of firm resettlement, and that rebuttable presumption exists if there is not evidence to the contrary. In CHIO v. INS, they found that there was no evidence whatsoever, so the rebuttable presumption did exist. In Andresian, they did find that because there was evidence that there was not firm resettlement, then obviously the presumption did not shift from the government to the petitioner. Similarly, in this case, obviously, reading the transcript, the immigration judge, it can be safe to say that he totally prejudiced the outcome of these proceedings. Throughout the whole proceedings, it seems as if the immigration judge was rushing through all the proceedings, refused to take any argument whatsoever. I do refer the Court to page 104, in which a question was asked, if you were deported, what country would you be allowed to stay? And the petitioner answered, I tried in Malaysia, I tried in Saudi Arabia, but they don't have any political asylum process. The United States is basically the only country that's willing to take me. And then again, when the government then asked a question on page 109 of the transcript, where they asked, did the government of Malaysia at any time force you to leave? Page 110, he's trying to respond. He's saying, my, my, and the judge says, no, no, just answer the question. Throughout all these proceedings, it's every page where the judge is telling the immigration judge, your questions are irrelevant, the whatever's been said is already stated in the application. He did not allow any testimony whatsoever. And clearly, in this case, we have the petitioner. No, no. I think that's a fair reading of the transcript. Start reading at 109, line 16. Question. Okay. And after 1987, you left with your wife and you lived in Malaysia. Is that correct? Answer. Right. Malaysia. And you lived and worked in Malaysia from 1987 until 1989? Answer. Right. I'm stopping you from testifying. And you were allowed to live and work in Malaysia? Answer. Right. Question. Did the government of Malaysia at any time force you to leave in 1989? That calls for a straight answer, right? I don't believe that. He says, my, my. Just answer that question. No. I don't. You call that hectoring? Maybe my opinion differ. I believe that in an immigration context, an immigration judge needs to present a full record, needs to allow the petitioner to answer the questions. From the beginning, the petitioner felt that he couldn't answer any questions. I was not the immigration, I was not the attorney representing the petitioner during these proceedings. However. You were not there. I wasn't there. But just by reading the transcript, every other line, you know, originally the attorney said, I want to raise an issue. He said, excuse me, I'm not taking argument. And then throughout the whole proceedings, go ahead, go ahead, that's irrelevant. When it came to political asylum, the attorney asks on page 101, comparing the U.S. system to the Philippines, why do you want to seek asylum in the U.S.? And he was explaining, you know, the U.S. provides a system, you know, for political asylum. And the judge interrupts, says, counsel, I'm not, that's not a relevant question. Now, how do we know? We can't look ahead. But how do we know that the petitioner was not going to go into how in Malaysia and how in Saudi Arabia they don't have that system? He did say the U.S. is basically the only country that would accept my application. How long was he in Saudi Arabia? He was in Saudi Arabia for four years. He was in Saudi Arabia. He lived and worked there? He did live and work there. However, he was there and he did state on the record he was working there. That was a working in the United States, the government issues working visas all the time. Ms. Van Jorgen, just let me see if I understand correctly. He was in Saudi Arabia for four years with his family. Yes. He worked, not interfered with, allowed to work, allowed to live there, right? Allowed to, because he had a job opportunity. Okay. And, in fact, allowed to leave and return. He was allowed to leave and return. However, if he did not have that job, he would not have been allowed. Clearly, he was not given the opportunity to present that Saudi Arabia does not offer permanent resettlement. In the United States, we offer nonworking visas to people all the time. Yes, they can come here. They can work for their employees. They have a three-year period. They can come, they can go, they can travel. But the day that they stop working for their employee, in ten days, they have to leave the United States. Is there any indication in the record that the length of his employment was restricted in any way? It was not stated that way, Your Honor, but it was clear, based on his testimony, that he was there just to work, that he tried to get permanent refuge there, but they did not offer. He clearly stated that. He was in Saudi Arabia from 1989 to 1993. 1992 is when his businesses and everything was ruined, was destroyed in the Philippines. He was at the point where he knew Malaysia wouldn't accept him. He knew Saudi Arabia wouldn't accept him. It was the point, okay, do I suffer with this job that I have? What if I don't like the job? Then I'm going to be booted out. I'm afraid to go back to my home country. I'm going to be killed. So your position is that he didn't permanently resettle in Saudi Arabia. There's no evidence of that because he was on a work contract. And when the work contract expired, he had no right to remain in Saudi Arabia. Exactly. Could you give me a citation to the record that so establishes that? Well, the argument is that. No, that's not the argument. You're the argument. Okay. I want the record. The record states that you were there to live and to work. That's what the record says. Where is that? When the question was asked, were you allowed to live and work there? What page does that go on, counsel? That would be page 109. He was saying, were you allowed to live and work? The question, yes, I was allowed to live and work. The question was right. Nine, that's about Malaysia. Are you looking at the transcript? Right, on 110. I'm sorry, 110. Yeah, I'm looking at the government's question where they ask, were you allowed to live and work? And he stated just that he was allowed to live and work and that he wasn't forced to leave. Now, this Court has held that, and the firm resettlement regulation states that there needs to be an offer of permanent resettlement. Permanent clearly means something as far as forever. Maybe I didn't make my question clear, and forgive me if I didn't. Where is there any evidence that his tenure in Saudi Arabia was conditioned on him working for a particular employer? Well, there is no evidence. You said that he had to leave if he didn't work there. Where is the evidence that he had to leave if he didn't work there? Well, basically, from his testimony when he stated that they don't have any political asylum process, there's an inference there that he was only allowed there because he was living and working. That's your best evidence now? That would be the only evidence. Clearly, the record was not created in full, and the government here, I believe, had a burden of proving that otherwise. They had the burden of proving for the rebuttable presumption. When he said, I tried, and they wouldn't give me permanent refuge, and his testimony was found totally credible, then I don't believe that the rebuttable presumption shifted in any way. The other circuits, specifically the Third Circuit Court in Avdili, found that you need to make a prima facie case. You either need to prove citizenship, permanent resident status, or any other permanent resettlement. And if you don't have direct evidence, which they didn't have, then your evidence needs to have a sufficient level of clarity and force. You're down to about a minute. Do you want to save some time for rebuttal? Yes. Thank you for your argument. We'll hear from the government at this time. Yes. Thank you, Your Honor. Donald Kuvion for the Respondent. Your Honors, the Petitioner talks about some kind of burden that the government apparently initially has, and that it has to be met before anything shifts. And I, frankly, do not know what counsel is talking about. I can't find anything in that regard in the regulations, and I can't find it in the case law. The principal case is a First Circuit case, and I usually assume that lawyers are very careful in their research, and that suggests to me that there's not a Ninth Circuit case. Yes, Your Honor. I am. I can find nothing in the Ninth Circuit. In fact, the leading case, C-H-E-O, would contradict that assertion. There's a regulation on firm resettlement, isn't there? I'm sorry? There's a regulation on firm resettlement, and doesn't it identify some factors that are to be taken into consideration? It does. And before you get to those factors, the regulation that was involved at the time of this hearing was the 2000 regulation. It's irrelevant whether it was 97, 2000, or 2003. They're the same. They're just renumbered or relocated. But I will quote from the 2000. Under 2008.13C, it talks of mandatory denials, and for applications filed before April 1, 1997, one of the bases for a mandatory denial is if the person has been firmly resettled within Section 208.15. Now, 208.13 goes on to say, and this is what it says. It says, if evidence indicates that one of the above grounds applies, then the applicant has the burden of proving by a preponderance of the evidence that it's otherwise. And then in 208.15, it says that what firm resettlement means is that the person has been offered permanent resettlement or some other type of permanent resettlement. And there's where we get to the factors Your Honor was speaking about or asking about. And it lists under two categories things that if you reach that posture, the petitioner that would show that the petitioner has or has not met his burden. And the first one talks about, in essence, that you're only in some place long enough to arrange, as it says, onward travel. And then the second. Transitory. Yes. Yes, and certainly not in most cases something measured in years, especially if one is living and working. But anyway, in the second one, it talks about, and I think this is what Your Honor was referring to, factors that can be considered to see whether or not if the person was there for a while, the circumstances of the stay or the residence were, as it says here, restricted in any manner. And it talks about, you know, your types of housing, your employment, what type of employment was available, do you have the right to reenter and leave, and so forth. And what we know on this record is because regardless of what the IJ did or didn't do at that one particular page that's been referred to, right or wrong, fortunately the government's attorney, just a few pages later, takes the petitioner right down the line covering the questions that need to be covered to get to this shifting in the burden and to get at least what they call indication or evidence indicating something. May I interrupt just for a second? I'm sorry? May I interrupt just for a second? Yes, of course. In looking at the IJ's opinion, not the transcript, but in the opinion, I didn't see a finding about what country this person had been firmly resettled in. There is a reference that the applicant was either in Malaysia or Saudi Arabia, and I just don't find a finding. It just says he was firmly resettled outside the Philippines. You can't be firmly resettled in two countries, I don't think. So which country is it? Well, Your Honor, in regard to finding, is that correct, Your Honor? Yeah. Yes. Because that's how you destroy the presumption with a finding of firm resettlement. And you're quite right. I mean, you go through the factors, the CFRs are there, the question's there, but I don't see a finding about which country he was resettled in. Well, I think, Your Honor, this proves the beauty of litigation. Things get refined and refined and refined, and I don't see it either. I see his mentioning two countries, and he says, well, you were firmly resettled outside the Philippines. Yeah. But resettlement is an important issue because basically it implies that the person can go back there and work. So, you know, I have a bit of a difficulty with it. And the concept, I mean, I understand particularly what you say, and it's tough to get hard evidence that somebody's offered asylum in a country, usually that person wouldn't get here, occasionally, but not. Well, if I may, and the Chio case is a perfect example, and it deals with Malaysia of somebody who's living and working. But on the other hand, you have, like, the Bobby Fisher situation in Japan. Now, was he firmly resettled there? Well, he went there illegally. He stayed there for a number of years. They don't want him there. An argument on the same facts might be made because he lived and worked there that, in fact, yeah, he was permanently resettled there. If someone comes to the United States on a work permit, they're not firmly resettled. There's a reason, Your Honor, that it works sort of this way, and it's not something that's just arbitrarily made up like, say, the law of negotiable instruments. When it's time to remove a person, the person may be from country A, but let's say they're claiming asylum. And they've been living, however, in country B before they got to C. So first there's an attempt to return the person to B. And if B doesn't want the person or won't take the person, then you have to consider A. And so it's not just something that's arbitrarily made up. Right. But here we have some regulations that are pretty specific. Well, I mean, they could be more specific, but you have regulations at some point. This isn't Judge made law or BIA made law. You have regulations. And it goes down, which you find, to find somebody is resettled in a certain country. And is it your position that despite that, an I.J. may say, well, I don't know which country it is, but he's resettled elsewhere and we can sustain that finding? Your Honor, is the question focusing on the fact that there are two countries outside the home country involved or? That and the absence of a finding. And the absence of a finding. Well, perhaps as fallback, he does at least mention the two countries. Yes. Is it your position that he firmly resettles Sariatam in Malaysia and then Saudi Arabia and can return to either one? I don't see anything to preclude that, Your Honor. Do you think that that was the finding of the I.J. when he said, Accordingly, I find that the respondent is not eligible for asylum, having firmly resettled outside the Philippines. No evidence being presented to the contrary. It wasn't a very precise finding. Right. But you wish us to interpret that to be that he firmly resettled in both Malaysia and in Saudi Arabia? Yes, Your Honor. I don't know any reason why you can't have it two or more. One, you're not precluded just to one. This is unique because of. Well, that's not very firm in his resettlement. That may be a resettled, but it's a firm resettlement may be a different concept. I don't know. It's just I don't think I've seen a case where you have somebody who's found he could be either firmly resettled in this. It's an alternative finding, the best you can say. We don't know where he was firmly resettled, but he was resettled somewhere. And that, to me, seems to depart from the findings that may be required under the regulations. I don't know. Well, I think we have beaten this horse to death. And unless you have something further. Only one thing. The question that was asked by the IJ and that the petitioner responded to when he said, well, a political asylum. We're not talking about political asylum. That's within the realm of possibilities. Resettlement under other circumstances is a separate matter. I mean, it can be. And that's what we have here when you live and work. May I, with the chairs and deciding judges, indulge in one more question. Is firm resettlement in your view a bar to withholding relief? No. And shouldn't the IJ have then applied the past presumptions to the withholding claim as opposed to rejecting it on the grounds of friendly asylum? I thought he did, Your Honor. Did he not also deny asylum? I mean, withholding? He did. But it appeared to me he did it on the basis of the firm resettlement analysis, which I don't think is properly permitted. Well, you can correct me if I'm wrong. If he did, that's a problem. Thank you. He made a finding that he could relocate to another portion of the Philippines. That's the decision, Your Honor? No. Well, thank you very much for finding that for me. Okay. Rebuttal? Yeah. It is clear that obviously this Court, Ninth Circuit and Andresian, have found that the government needs to look at the duration and circumstances in order to indicate resettlement. In Andresian, they found that because of the duration and circumstances, the presumption did not shift, meaning to say that there is the burden there of the government. And when we have a situation where you need to show official and permanent resettlement, then the burden in this case should not have shifted, because more information was necessary about whether he would have been allowed to stay there, whether the job, if it's not clear, was the job just there for, was he there just because of the job, or was he given any other, I mean, the Ninth Circuit lists clearly different standards that need to be looked at. Two weeks ago in Siong v. Ashcroft, they found that the presumption was found because they were French citizens. Now, obviously, a citizen is someone who has entitlement to do whatever they want to do. Here, he didn't have that entitlement. He said, I tried to file, I tried to do. They wouldn't offer it to me. The United States offered me permanent refuge. And I believe that that should have been at least more evidence should have been allowed throughout the testimony so that he could prove his claim, and I believe a remand would be necessary in this case to do that. Thank you very much for your argument. Thank both counsel for their argument. This last case, Monsalon, is submitted for decision. The prior case, Mohammadi v. Ashcroft, 03-71735. Submission is deferred for 30 days pending arbitration, mediation, excuse me. And we'll enter an order. The panel will enter an order on that. Thank you. We stand adjourned. Thank you. Thank you. Thank you. Thank you.
judges: Hawkins, Thomas, Bea